Incorporated v. JCM American Corporation. Mr. Abel. Thank you, Your Honor. May I please support David Abel for JCM American, Japan Cash Machine, collectively referred to throughout this case as the JCM Independence. This is a case that has a long history. It goes back to an earlier history from a Mars v. Koinexceptor case that the ultimate conclusion of this court on that case is the beginning point for when the instant case started to unravel. The issues really here are should JCM be entitled to recover the full amount of a sanction that was entered under Rule 37 for the failure to approve documents, number one. And then number two, whether JCM should be able to proceed on its exceptional case motion when the case has been dismissed. And the question there turns on whether the case should have properly been dismissed with prejudice as JCM requested. There are some other subsidiary issues, but we'll kind of get to those and hit on those. But the usual rule in the Third Circuit is without prejudice, isn't it? The rule in the In re bone screw would be that it's without prejudice. And I'd say that in re bone screw doesn't really apply here because in re bone screw the parties agreed that there was no federal question whatsoever. Here we have a federal question. Mars specifically pled a federal question, infringement under and standing and everything under 1338. Once they did that under this Supreme Court's decision in Arbaugh, then the district court had jurisdiction. And subsequent to the Supreme Court's Arbaugh decision, the Third Circuit in metropolitan life has said, okay, now we have to look at whether or not the statute, the conferred jurisdiction, is a statute that is a jurisdictional determinant to a statute. And here they say, no, 1338 is not. In this case, 1338 is not a threshold jurisdictional statute, is the only threshold jurisdictional statute. And the standing for a party to seek infringement under 35 U.S.C. Section 281 is not. So under metropolitan life, the decision would have to be that the case is so frivolous that it can't be brought or to be dismissed for lack of subject matter jurisdiction. If the case would fall under that category, then it would seem that by definition it should be subject to being an exceptional case under Section 285, if it is that frivolous. So, subsequent and building upon Arbaugh, this court in the Lakewrights case also came to essentially the same conclusion. That if it's a threshold jurisdictional question, you pass that when you make the claim that there's a 1330 under 1338. Then the decisions from that point on have to be, essentially, I would submit, have to be on the merits. Whether or not there is, whether the plaintiff can actually make the allegations that it pled in its complaint. There's no doubt here that the plaintiff, Mars, when it filed the case back in 2005, claimed to be the owner of the patent, and that he claimed to be, he claimed infringement and damages to itself. It ultimately could not prove that. It could not prove that it was the owner of the patent, because in 1996, it assigned all of its portfolio of patents to MEI. MEI was not a party to the original complaint as filed. This court's decision in the Mars versus Coin Acceptors case, which came down in June of 2008, interpreted that 1996 agreement. And it interpreted it in a way that found that that 1996 agreement transferred the interest, the patent, to MEI. So when that came down, this case was effectively stayed for a while in that time period. When a case got reopened and discovery restarted, then we were asking for damages discovery documents once again. We'd had two orders to compel damages discovery documents that had previously not been complied with. And two days before a hearing, three days before a hearing on another motion to compel damages discovery documents, the 1996 agreement was produced to JCM for the first time. Now, immediately upon getting that, we asked the magistrate, who was going to hear the discovery dispute, that the case should be stayed. We asked Mars to stay the case so that we could bring this jurisdictional issue up immediately to the district court. The district, or the magistrate, said, no, I can't stay the case. That's for the judge to do. I need to keep this case going and keep discovery going. Mars wouldn't agree to the stay of the case. They wanted to keep it going as well. I think at that point in time it was pretty clear that Mars would not be able to continue. Now ultimately, a week after that, we filed the motion to dismiss with the court. In December of 2008, that motion was granted. The motion was granted with the court saying, I don't have jurisdiction over Mars because they didn't own the patent. Once the court says, I don't have jurisdiction, then it can't write prospective orders. It can't say that discovery can carry over to a new case. This court's decisions are basically to the effect that once the district court says it doesn't have jurisdiction, its orders are void. Even if it has issued substantive orders, those orders are voided. So in that context, we have a kind of a procedural nightmare because the order bringing MEI into the case under Rule 25, which had occurred earlier in the case following up on the sale of Mars or MEI by Mars in 2006, that order is a void ab initio order. So MEI is not in this case. One of the points made in a motion was MEI is not a Mars and MEI filed a cross motion. Yes, effectively, it's Mars cross motion to try and bring MEI into the case. That was denied. They filed a notice of appeal of that cross motion, denial of that cross motion, before and then we moved to dismiss MEI from the case. After that was briefed, then MEI and Mars withdrew that cross appeal. That cross appeal was MEI's last chance to be a party to the original action because the court's jurisdiction is decided based upon the complaint on the day it's filed. And on the day that was filed, Mars was not the owner of the patent. So on the day that it was filed, this case was originally filed, Mars did not have standing. But we only found that out three and a half years almost after the case had proceeded. The court granted sanctions and said, okay, bring your fee application. We brought the fee application. The fee application was essentially $1,140,000 in discovery fees that had occurred after January of 2006 when the court found that the 1996 agreement should have been provided. And about $300,000 in fees and costs. The court didn't have an objection to any of those fees and costs as far as how much they were. It had objections to certain issues but didn't have anything with respect to the award of that amount of money. But when it turned around and said, you don't get that money, JCM, you don't get that money now because some of those fees may be used in the case to be filed by MEI. But MEI is not a party to the case originally, so they probably can't be sanctioned. And that was a sanction was the Rule 37 sanction was as against Mars and MEI, but I'm not sure that they can be sanctioned. MEI can be sanctioned if they weren't properly in the case. So we shouldn't have to wait to whether there's another case which is a completely separate action, which doesn't even involve Mars, to ask for the attorney's fees that were actually awarded as a result from what happens in another case. It's as if a court says, I'm going to grant you a sanction and I'm going to give you a million dollars on your sanction, but you're going to have to wait for a year to see if anybody out there files another case that the discovery may be used. It doesn't really matter if it's MEI or anybody. Waiting for those fees shouldn't have to occur until after another case gets processed. Once the sanction was awarded, and there's no doubt it was awarded, once the sanction was awarded, then the fee application should have proceeded and the fees should have been awarded. Now the other issue comes down to, the other big issue comes down to, whether or not the case should have been deemed exceptional. I'd submit that under the Arbaugh decision, the Metropolitan Life decision of the Third Circuit, and this court's decision under Lightcubes, and the fact that there is a need for uniformity with respect to how to determine a Section 285 case, that there needs to be an accommodation as between what this court's historical position has been with respect to a dismissal when the plaintiff doesn't have an ownership interest in the patent, versus Arbaugh and those other cases I mentioned. Now this also is the case, the case, where there is no possibility that Mars can go back and obtain the patents. So it can't ever cure, and it didn't cure, its jurisdictional defect. Mars didn't refile a new case. It didn't go buy the patents and refile a new case. It can't. The patents are gone from Mars, so it has no possibility of getting it back. There are cases that basically say, if there's no possibility of giving it back, then that may be the appropriate circumstance for a decision with prejudice. I would submit this is this case, that this is the case to say this is with prejudice. I'll reserve the rest of my time. Okay, please the court. I think as a threshold matter, JCM has a bit of a quandary. It wants to argue two separate line of cases. In one instance, it's original argument, both at the trial court and later in its briefing on appeal, until its reply when it discovered the Arbaugh line of cases and decided it wanted to shift its position. So I posit that it needs to take a position one way or the other, and as you heard in the opening argument, I think it wants to have both arguments available. I think they're inherently inconsistent. Focusing first on the issues presented in the, down below, the district court considered a 12b1 motion, which included a motion to dismiss based on 12b1 and also included as a secondary motion, a motion for sanctions seeking dismissal with prejudice. And the trial court correctly looked for controlling authority and found the bone screw case, which is uniquely addressing both of those issues. Having found that case, the court considered the bone screw holding and the bone screw holding is clear. It says in circumstances where there is no Article 3 jurisdiction, a court must, has no option, no discretion, must dismiss without prejudice. What about Poulos? Well, you don't get to Poulos if you have a circumstance where there's no Article 3 jurisdiction. Poulos only applies in the circumstance where the court has Article 3 jurisdiction. In fact, the entire Poulos decision is predicated on a circumstance in which Article 3 jurisdiction exists. Well, this brings us to Arbaugh. Yes. What are your comments on that? Well, on Arbaugh, the court was seeking to draw a bright line for purposes of deciding whether a statute, whether statutory requirements were jurisdictional or whether they were elements of a claim. And it says, you know, if Congress doesn't give an indication as to which one it is, you presume it's elements of a claim. Well, here we have a very different circumstance. We have well-established law that says in the circumstances in which Article 3 standing requirements of injury and redressability are going to be met by a patent plaintiff. That patent plaintiff must be either the owner or the exclusive licensee. In the circumstances in which the plaintiff is neither, the court has no choice but to say there is no standing. So in this circumstance, you don't need Arbaugh or well-established law is there's no standing. And if there's no standing, you never get to this analysis of whether it's an element of claim or not. So you disagree with the view that following Arbaugh, if you plead a patent case, then the standing issue becomes a factual matter? Well, I think... Sort of establishing a basis to proceed as a proper party plaintiff. Yes, I disagree that that is actually an element of a claim. I believe it's well-established law that that's a standing analysis. Although I do believe that the court below is allowed to look at certain factual details in order to render a conclusion as to whether standing is present or not. That's the power to decide, right? They have got to decide that as the threshold issue. In this instance, that analysis occurred and I would say that the only relevance, frankly, of the coin acceptor case is that there was a finding by the the CAFC that in fact the rights from Mars to MEI. So when the district court properly looked at that agreement and concluded, well, I believe that there is no standing for Mars here. Once you reach that analysis by looking at the 96 agreement, it doesn't convert it into a rule 56 motion on the merits or even a finding on the merits. It frankly just goes to what the power to decide. So I believe that the earlier statement made by counsel for JCM that Bones group is the only case that one could look to, is an inappropriate case to look to for guidance on the issue as to whether or not dismissal without prejudice is proper. I would direct this court to its 2009 decision in the University of Pittsburgh in which it says the law universally disfavors dismissal with prejudice in a and it has a strong presumption that a dismissal with prejudice would be improper. And there are a handful of cases in which there have been decisions in which a dismissal without prejudice could be included under a circumstance where there's no standing. And those cases are familiar to this court. SICOM and textile products and both of those circumstances were unique. In the circumstance where the patentee himself was being sued by a plaintiff who purported to be an exclusive licensee with the right to sue, the court concluded that no it was a fair license and in that instance the plaintiff who had not prevailed and who had been found to be lacking standing, the court said it was it was plainly unlikely that the supplier who was a hostile patentee. Clearly that circumstance doesn't exist here. In addition I'll point out that in textile there was not even an issue, there was not an issue on appeal as to whether dismissal with prejudice was proper or not. I believe the reason was and this was actually part of the holding in HR Tech, the court said one of the reasons why it was likely they didn't challenge the dismissal with prejudice is because they knew they couldn't cure. That's not our problem here. That's not our fact pattern here. In SICOM the court had a slightly different fact pattern. Again at the district court there was not a challenge to the dismissal with prejudice. The nature of the dismissal was not challenged until the appeal but more importantly in the SICOM case there were two attempts to, there was a follow-up attempt to cure standing that was unsuccessful and we don't have that circumstance here. In fact there are several ways to cure standing here. University of Pittsburgh tells us that all that we have to be able to do is have a a party. Okay not not not bars but a party and in this instance a party could cure, MEI could cure. In fact the trial court said one of the way and it's holding implicit in its holding when it said the discovery if MEI chooses to file the case could follow it to the new case is it's essentially acknowledged curing as the MEI and with the 2009 district court action that's been filed by MEI versus JCM in fact we have that cure but not only is curing very likely it's already happened. Now further Mars of course could still take an assignment from MEI to this very day and could become the plaintiff as well. Mars and MEI have a long-standing history of working cooperative. In fact one was owned by the other for a period of time. Certainly if the only option left was for Mars to be assigned the patent back all types the title rights and interests from MEI they would have every incentive to do that if their only option to have the case proceed was that. So the curing notion is there the curing is not only a curing that one has already occurred and two Mars could simply become the asinine of the patent rights as well. So I think the curing is a red herring here and I think that SICOM and textile products which are outliers to the universal rule that says you know with rare exception we're going to dismiss without prejudice those cases are clearly distinguishable on the facts from what we have here today. With respect to the sanction for the discovery violation the court was not able to identify which attorneys fees fall within the scope of its earlier order and so the defendants may be better able to identify which discoveries could have been avoided at the conclusion of the new case. They may request discovery fees associated with the December 23 order at that time. They would request discovery fees from whom? Well MEI? I think Mars is no longer in the case. Your honor I think they could actually, the court below could arrange it in either instance. They could administratively reopen the 2005 matter for to to hold open for purpose of that sanction or they could apply it against MEI if they thought that was the appropriate sanction. My read is the reason the court was forced into the position I believe it was within its inherent powers to order that sanction. The reason it was forced in that position is it asked on accounting of the fees that could have been avoided had the 96 agreement been produced earlier had it not been delayed and it said start with January of 06, go up to the point of termination of the case and let me know what could have been avoided. Rather than follow that clear instruction which it had at least two bites at the apple to respond to, JCM decided it was going to put in every single dollar of discovery from January 2006 to the termination of the case. You're representing both Mars and MEI. Yes, I am, sir. Your view is that at the end of the litigation that is ongoing with MEI that Mars would be would be subject to continued jurisdiction of the court to oversee this particular order and the apportionment of the of the attorneys fees as appropriate. If that was the order at hand we would be agreeable to that, Your Honor. But I also offered you the Tyco case, Tyco v. Ethicon. There was a circumstance in which late in the case, in fact at trial, there was a challenge to standing and even in that circumstance the court properly determined, this court properly determined, that a dismissal without prejudice was the proper course of action and it said should Tyco be able to cure the ownership defect? Most if not all of the evidence, testimony, and rulings developed during trial should be applicable to a subsequent proceeding between the parties. So in that that scenario is very similar to our own in which the court said, look, most of this stuff's carrying forward. When this is cured, let's see what's what's going to be in play. And there was no, in fact, that was in the context of deciding whether there was any prejudice to Ethicon and the court decided there wasn't. It said most of this stuff's carrying forward. In this instance, I would offer that it's going to be hard to consider evidence and testimony that wouldn't apply. I'm not aware of a meaningful category of evidence and testimony that won't apply, but since the court was not giving an opportunity because JCM refused to follow its directive, the court wasn't able to discern what would or wouldn't carry forward. It wisely picked a sanction that it would be able to try to discern between what is or isn't the basis based on the delay at a future date. I mean, I think the court frankly was within its inherent authority to deny a sanction at that point because of failure of JCM to comply with this directive. It took it took a less draconian measure to JCM's benefit because the opportunity for sanction is still open. If I might just follow up on the Arbaugh. In the circumstance here on JA 8496 in the trial courts in the papers presented by JCM to the trial court below, JCM clearly stated that this was a case involving Article III jurisdiction. In fact, it stated in the absence of standing there can be no Article III jurisdiction. So I would say that it's not a matter of a muddy record. It's crystal clear that the intention of JCM at the time at the trial court was to argue jurisdiction. And it was again only until the reply brief here that Arbaugh was picked up as being a backup argument. The challenge with it here is it's not really a backup argument. It's an inconsistent argument because you can't on one hand say that this is a jurisdictional case where JCM, I'm sorry, where Mars has no standing and no Article III, the court has no Article III jurisdiction and then the determination of standing under Article III to bring a patent case is an element of a claim. So I believe those positions are mutually inconsistent. And a final point on that is I believe Morrill v. Microsoft as well as the Schreiber Foods and the Paradise Creation cases that are cited in the judge's order, he doesn't cite Morrill but he cites the other two, stand for the are not the owner or the exclusive licensee. There can be no standing in a patent case. As one follow-up on the issue of curing the HR tech case stands for the proposition in the instance in which a district court has found dismissal without prejudice was the proper finding. They found there was no reason to second-guess the district court's analysis. And I would say here we have the same circumstance. Even if Bonescrew doesn't necessitate a dismissal without prejudice, which I maintain that it does, there's a must. There's no choice. The HR tech case applying law from a different circuit says, look, we're not going to second-guess a trial court here. We don't have a reason to. I would say I haven't heard a reason today and there wasn't a reason identified in the briefing as to why we would second-guess a trial court. As to the issue of sanctions within the sound discretion of the trial court to determine the discovery sanctions, it has a well-balanced opinion, considered all of the necessary information, and came out with the proper result. As to other issues that I have not covered here, I will rely on our papers and I would ask the court to affirm the trial court's decision. Are there any other questions? Thank you. Council indicated that there's ability to cure in this case and he says that MEI's filing of a new case has cured the jurisdictional defect. I respectfully submit it has not cured the jurisdictional defect with respect to Mars because Mars is not in that case. There is no cure for Mars filing a case that doesn't have that it doesn't have jurisdiction on. It had no ownership interest in the patent when it was filed, so there cannot possibly be a cure. Even an assignment back to Mars today would not help Mars case because Mars case, when it was filed, was we're entitled to damages from this point forward, from the filing point forward, because there was no marking of the products that used the patents and there was no prior notice of the products that used the patents. And since there was no marking on products that used the patent and no prior notice, the damages for that period of time when Mars filed the case and propagated the case are not available to anybody, even if there's an assignment back today. If there's an assignment back today, that would be allowed to Mars to continue the case from this day forward, not from back in time. It would not relate back to when the original case was filed. It would be this day forward and that's a completely different case. Damages for 70 million dollars alleged in damages, that's wiped out. Nobody can get that now because nobody gave notice that owned the patent, so that can't cure. And the MEI has filed a new case. Mars can't file a new case if MEI's got a new case, okay? They're mutually exclusive if now they're both claiming ownership interests. University of Pittsburgh is a different kind of case because at least Pittsburgh owned part of that patent. Mars owned no part of this patent when it was filed. None. And it gave it up in 1996. And it knew that for a long period of time when this case was going on. Mars was propagating this case for over two years, all the time it was getting ready to bring the appeal of the coin acceptors case here, on the exact same agreement, on the exact same issue, whether or not that agreement divested of jurisdiction. But it never gave that agreement to JCM. There's no excuse for that. It was sanctioned for that. The issue was not whether they should be in the second filing order. The issue was how much it was going to be. And the court says, I'm not going to award that right now because maybe MEI can pay it. Maybe MEI can use some of that discovery. But you can't roll that over to a completely different case because that case does not cure Mars' standing defect. It can't. The issue was, one of the issues was, when we said it was an Article 3 case because Mars couldn't prove standing, was they didn't own the patent. And part of having a case is to basically, an Article 3 case, is to be able to make out the element that you plead. You plead an element that you own the patent. You have to make that element out. You have to prove it. Under Arbaugh, you have to prove it with facts. It's a fact determination. So when you have a fact determination of an issue that the plaintiff has the burden of proving and the plaintiff loses on that issue, then I would submit that that has to be an issue on the merits. And when it's an issue on the merits, then that allows the prevailing party to be the party that, the prevailing party. So it would, it would never be appropriate to dismiss a case for lack of standing without prejudice. If the party has no possibility, it had no interest in the ownership of the patent when the case was filed and no possibility of curing, yes. Then it's, then you have to. Regardless of curing, if there's simply a lack of standing. If there's a lack of standing and, you know, no interest in the patent, I'd say yes, you have to dismiss with prejudice. In every case. Because there's no reason not to. Because if you don't have standing when you file the case, what difference does it make if it's with prejudice? You can't bring that same case again if you don't own the patent. If you go out and buy the patent after that, you're filing a new case. A brand new case. Doesn't have anything to do with the original case. But you'd be foreclosed from refiling even if you later acquired title. You'd be foreclosed, you could be foreclosed from refiling on the issue that you'd filed the first time around. You wouldn't necessarily be if you went out and bought it new. Your patent infringement case is forever gone. Forever gone for at least from the time period up until you, you know, you basically buy the patent so that you then have a claim. Because you didn't have any claim the first time. You didn't have any rights the first time. You shouldn't have been there. All right. Thank you. Thank you.